Raul Mendez
2712 N Goldeneye Way
Meridian, Idaho 83646
Telephone:  (208) 871-7237
raulmendez02@yahoo.com
Pro Se

U.S. COURTS

NOV 1 5 2021

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

RAUL MENDEZ,

      Plaintiff,

Case No 1:21-CV-448-BLW

Vs.

COMMUNITY HEALTH CLINICS, INC.
dba TERRY REILLY HEALTH SERVICES;
US DEPARTMENT OF HEALTH AND
HUMAN SERVICES

      Defendants.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW RAUL MENDEZ, plaintiff pro se and for cause of action against the

above-named defendants does complain and alleges as follows:

### NATURE OF THE CASE

1.  Plaintiff is bringing suit for economic losses, both past and future, as well as noneconomic

damages, both past and future, for violations of his civil rights and for being subjected to

discrimination in the workplace on the basis of his race, color and national origin.   All such

actions by defendants violated the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000.

2.  Mendez seeks damages for the violation of his fifth and fourteenth amendments under the

constitution.   42 U.S.C. 1983.

3.  Mendez seeks damages against defendant TRHS for retaliating after he raised concerns of

fraud by misrepresenting charges being submitted so that defendant could get government

monies that they were not entitled to. Furthermore, plaintiff raised concerns with defendant TRHS about the substandard level with quality of care being provided in X-ray by Medical Assistants. All such actions by defendant violated Mendez right to free expression protected by the First Amendment. 42 U.S.C. 1983.

4. Mendez seeks damages under the Federal Tort Claim Act (FTCA) against defendants for Mendez having gone almost five years without medical coverage to which he was entitled under continued employment. Mendez suffered heart/health problems as a result of the depravation of his property interest in continued employment without Due Process.

## PARTIES

5. At all times relevant herein, Mendez was, and is an adult individual and a citizen of the United States who currently resides and has resided at all times relevant to this action, In Boise, Idaho. Mendez's ethnicity is Latino of darker complexion and he speaks with an accent.

6. Defendant TRHS was, and is a general non-profit corporation duly organized and existing under the laws of the state of Idaho, and in good standing with the Idaho Secretary of State, engaged in the business of providing medical care and services in Canyon county and elsewhere. In addition, defendant has been deemed an employee of the public health service by the Department of Health and Human Services and as such, they were/are acting under color of State law. Defendant TRHS was Mendez employer from August 2015 until he was terminated in November 2015.

## JURISDICTION AND AVENUE

7. The Court has jurisdiction of this matter pursuant to the Civil Rights Act of 1964, U.S. Const. Amend. I. Amend V. Amend. XIV. 28 USC 1346. 28 USC 2671-2680.

8. As the events giving rise to this action all occurred in the State of Idaho, venue is appropriate

in the District of Idaho pursuant to 28 U.S.C. 1391 (a) (2).

## FACTS COMMON TO ALL CAUSES OF ACTION

9.   Mendez began working for defendant TRHS on August 20, 2015 when he had a two-day orientation along with two other coworkers.   They were provided with a new employee packet including "new employee orientation checklist."   Plaintiff was made aware during orientation that it is company policy to provide a mentor plus enough training time of approximately one month.

10.   On August 24, 2015 plaintiff started to work as an X-ray tech at the "Nampa 1st clinic" under the mentoring of Katia Gillis; the previous tech.   She advised plaintiff that defendant TRHS refused to comply with their own policy regarding the 30-day training and as result; she could only answer questions/train for one day.   At the same time, one of the other employees during the orientation was afforded a full month of training.   The employee afforded preferential treatment, advantages, and better opportunities to be successful in her position is Caucasian.

11.   Mendez interviewed for the X-ray tech position sometime at the beginning of August when he was told that part of the responsibilities included the training/supervision of Medical Assistants taking X-rays at the different satellite facilities.   Plaintiff was lead to believe that the MA's were competent enough to be taking x-rays and that they did not require much supervision. The Medical assistants are non-licensed providers.

12.   Soon after he started working at the Nampa 1st clinic and had the opportunity to review work by the MA's; plaintiff became alarmed with the staggering level of incompetence and neglect by the corporation in putting non-licensed staff with as little as two day training perform full scope Radiology examinations on patients.   Notably, the majority of patients being seen by TRHS are Latino most of whom have darker complexion and speak little to no English.

13.   On or about September 11, 2015, plaintiff met with Don Morrison his direct supervisor regarding issues/concerns with the level of training the mostly Latino MA's have received in X-ray and the substandard quality of care being provided to the mostly Latino patient population in Radiology.   Mr. Morrison did not seem concerned but stated that he would send the MA's to Mendez for more training (he never did).   In addition, he informed Mr. Morrison that he needed more training with the digital software since every Digital Imaging Software is different.   At no time during the meeting did defendant TRHS relay any concerns with plaintiff performance or conduct.

14.   On October 7, 2015, TRHS Human Resources department was asking for a copy of the completed/signed 'new employee checklist'.   This was roughly a little over a month when plaintiff should have been provided with the 30-day training.   Mendez pointed out that he had never been assigned a mentor, a training plan, and he had not been shown many of the items/policies listed on the list.

15.   Plaintiff met with Mr. Morrison on October 27, 2015.   During the meeting, Mendez was informed that he had to sign the 'new employee checklist'.   The meeting was roughly two weeks prior to termination and again plaintiff raised concerns with being asked to sign a document even though he had not been given the 30 day training/mentoring stated on the company policy and when he was still requesting additional training in the digital software in order to better utilize the tools on the system.   Defendant TRHS refused to provide him with a copy of the signed list. Mendez again expressed to Mr. Morrison that the quality of X-rays taken by the MA's was substandard with consistent mispositioning, flawed techniques, clipping of anatomy, etc.   Mr. Morrison made the following statement:  "this group is not a very smart bunch and they do not have the capacity to understand some of the more technical stuff.   You need to explain things to

them in the most simple of terms.   They also make a lot of mistakes with medication administration."   The organization views the mostly Latino MA's as intellectually and capably inferior who are providing care to an inferior group, therefore the lack of concern for quality.

16.   From 8/20/2015 to 11/11/2015, plaintiff was asked on multiple occasions by the corporation that in order for them to receive government money that those X-rays taken by the MA's had to be signed off on the electronic health system showing that the X-ray tech (licensed staff) had done them.   Notably, the X-ray tech that Mendez replaced had also been asked to misrepresent those charges and she felt that was fraudulent as well.   Indeed, Plaintiff expressed concerns to Mr. Morrison and administration about the appearance of trying to deceive in order to get the money.

17.   On the 10/27/2015 meeting with Mr. Morrison or anytime between 8/20/2015 to 11/11/2015 there were no concerns by defendant TRHS with Mendez performance/conduct that he was made aware off.

18.   On 11/5/2015, Mendez contacted Roxanne Vidales in administration to see if she could facilitate additional training with the digital imaging software.   Mendez noted that he made previous unsuccessful attempts to get the training from Mr. Morrison plus he had already signed the 'new employee checklist' even when he had not received the training outlined by company policy.

19.   Defendant TRHS alleges that a meeting was held sometime in mid-day on 11/10/2015 with the Imaging Center of Idaho (ICI) who 'interprets' the x-ray examinations performed at the clinics.   In that meeting, it was alleged that they had 'difficulties' in the working relationship with Mendez.   TRHS alleges that based on the meeting they made the decision to terminate Mendez immediately.

20.   Mendez met with Mr. Morrison on 11/10/2015 around 4pm and after the defendant's TRHS meeting with ICI.   Mr. Morrison did not inform Mendez of any issues/concerns and instead he informed plaintiff not to proceed with the training on the digital software.   Later on the same day at 6:14pm, Mr. Morrison sent an email informing plaintiff that he wants to "put the training on hold like discussed earlier today and not to move forward with any arrangements until I give you the ok."   Notably, there was never a single mention of any issues arising in an ICI meeting.

21.   On 11/11/2015, Mendez met with Mr. Morrison, Matt Oates and Shannon Blackstock from Human Resources at 2pm.   During the meeting, he was informed that he was being terminated due to performance and conduct issues.   Ms. Blackstock informed plaintiff that he could appeal his discharge to the Board of Directors but she discouraged Mendez from doing so, since it would not change the decision to terminate employment.

22.   Mendez termination was due to what defendant claims is "conflict with others."   However, plaintiff was made aware by Katia Gillis that a Caucasian employee who managed the front-desk was known to be unprofessional towards staff and patients but somehow she got a promotion. Mendez on the other hand had no record of misconduct but he was terminated.

23.   On 12/16/2015, Mendez finally got his final paycheck but only after, he had to file a wage/hour claim with the Idaho Department of Labor.   Mendez had been told that he would get his final check on 11/15/2015 and his contacts to try to get his final pay went unanswered. Plaintiff also asked the IDOL to get a copy of the employee handbook and the 'new employee checklist' since defendant TRHS had refused to provide him a copy of them.   Today, Mendez still does not have a copy of the requested documents.

24.   On 1/4/2016, Mendez filed for unemployment insurance but defendant TRHS denied it alleging misconduct.

25.  On 1/21/2016, as part of the intake questionnaire with the IDOL, TRHS admitted that they do not have any documented warnings/concerns nor that they had ever discussed issues with performance/conduct with Mendez.   Nor was he given a chance to improve his performances.

26.  On 2/9/2016, an unemployment appeals hearing took place in front of Judge Kime; a licensed Attorney in Idaho.   Again, defendant TRHS representatives provided testimony under oath that they do not have any documentation regarding Mendez alleged issues with performance/conduct.   Judge Kime determined that the discharge was not related to misconduct.

27.  Mendez asserts both employees who started at the same time on the same orientation were treated vastly different when it came to their training. Plaintiff was only given a single day of training contrary to company policy while the Caucasian employee was put in a better position to succeed when she was indeed given the 30-day training.   Mendez was also terminated without the company following their detailed disciplinary procedures and he was not allowed the opportunity to improve any alleged deficiencies.   In addition, the quality of care being provided to the mostly Latino patient is an accurate reflection of how defendant feels towards those with a darker complexion.

28.  Mendez filed a timely charge of discrimination with the Idaho Human Rights Commission.

29.  Mendez was deprived of his property interest in continued employment without Due Process.   Mendez was entitled to continue health coverage.   He went without coverage almost five years and as result he was not able to get the regular checkups that would have prevented the heart/health problem found on January 2020.

30. Mendez would note that he opened complaint 1:16-CV-425-DCN back on 9/20/2016 only against Terry Reilly Health Services.   The pleadings on that case show that this defendant admitted to being an employee of defendant USHHS.   The additional facts after the opening of

case arose on 1/2020.   Thereafter, Mendez sought to amend complaint based on the additional

facts and currently the 2016 case is pending appeal.   Mendez opens this case including the

USHHS as an extra precaution noting this defendant was not included back in 2016 and when the

question on appeal is if this defendant is a proper party.

## FIRST CAUSE OF ACTION

### DISCRIMINATION ON THE BASIS OF RACE

31.  Defendants engaged in policies and practices, which willfully, intentionally and unlawfully

discriminated against Mendez on the basis of his race.

32.  Defendant's conduct as described herein violated Title VII of the Civil Rights Act of 1964,

as amended.

33.  As a direct and proximate cause of defendant's discriminatory actions, Mendez has

suffered, and will continue to suffer in the future, lost income, lost fringe benefits and lost

seniority, the extent of said damages to be proven at trial.

## SECOND CAUSE OF ACTION

### DISCRIMINATION ON THE BASIS OF COLOR

34.  Defendants engaged in policies and practices, which willfully, intentionally and unlawfully

discriminated against Mendez on the basis of his race.

35.  Defendant's conduct as described herein violated Title VII of the Civil Rights Act of 1964,

as amended.

36.  As a direct and proximate cause of defendant's discriminatory actions, Mendez has

suffered, and will continue to suffer in the future, lost income, lost fringe benefits and lost

seniority, the extent of said damages to be proven at trial.

## THIRD CAUSE OF ACTION

### DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN

8

37.  Defendants engaged in policies and practices, which willfully, intentionally and unlawfully discriminated against Mendez on the basis of his race.

38.  Defendant's conduct as described herein violated Title VII of the Civil Rights Act of 1964, as amended.

39.  As a direct and proximate cause of defendant's discriminatory actions, Mendez has suffered, and will continue to suffer in the future, lost income, lost fringe benefits and lost seniority, the extent of said damages to be proven at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF U.S. CONST. AMEND.  V. 42 U.S.C.  1983

40.  To state a claim under 42 USC 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by Federal statute proximately caused by conduct of a person acting under color of state law.   Defendant TRHS has been deemed an employee of the public health service by the Department of Health and Human Services and as such is recipient of substantial government funding.

41.  Mendez was denied any kind of due process by defendant TRHS as outlined under their detailed progressive discipline procedures.   He was also denied the training outlined in their company's policy.   Mendez was subsequently terminated and discouraged to file an appeal with the board of directors.   He was subject to discrimination at the hands of government actors.

42.  Mendez has exhausted his administrative procedures under the Idaho Human Rights Commission.

43.  Mendez has been deprived of his property as a result of hardship caused by defendant who denied him adequate procedural protection.

## FIFTH CAUSE OF ACTION

### VIOLATION OF U.S. CONST. AMEND.  I.   42 U.S.C.  1983

9

44. Defendant TRHS has been deemed an employee of the public health service by the Department of Health and Human Services and as such, they were/are acting under color of State law.

45. Defendant TRHS is recipient of significant government funding.   In order for TRHS to get funding for X-ray they had to certify that, a licensed X-ray Tech performed the examinations.

46. Defendant TRHS utilizes several Medical Assistants in X-ray at their facilities, they are non-licensed personnel.   Mendez had the opportunity to supervise the MA's and found a staggering level of incompetence causing to compromise the quality of medical care being received by the mostly low-income/poor Latino population.

47. Defendant TRHS has only provided as little as two day training to the MA's so that they can perform full scope radiology on patients.   Mendez met with Mr. Morrison and relayed the concerns that the quality of care being offered by the X-ray departments is substandard. Mendez suggested additional training, limiting the number of MA's taking x-rays, and limiting the scope of x-rays they were allowed to do.   Mr. Morrison is the nursing manager overseeing both the MA's and X-ray but he took no measures to resolve the problem.

48. Defendant TRHS is charging full price for suboptimal examinations performed by the MA's.   Despite the fact the organization getting all kinds of government money for caring for the poor population.   Many of the patients have little money to pay for suboptimal exams.

49. Defendant TRHS asked both the previous X-ray tech and Mendez to falsify x-ray charges on the patient's chart for those exams done by the MA's.   Specifically, Mendez was asked to sign off on the charges so that his name would be 'time stamped' on those exams.   The purpose of the deception was so that TRHS would get monies from the government that otherwise they are not entitled to due to their decision to utilize MA's in X-ray.

50.   Mendez expressed his concerns with both Mr. Morrison and administration regarding the appearance of illegality in the practice and he did not felt comfortable signing off on those charges.

51.   Mendez was a public employee who was subjected to adverse employment action after he engaged in speech that was constitutionally protected because it touched on matter of public concern and the raised concerns were the substantial motivating factor for the adverse action.

### SIXTH CAUSE OF ACTION

<u>VIOLATION OF U.S. CONST. AMEND. XIV.    42 U.SC. 1983</u>

52.   To state a claim under 42 USC 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by Federal statute proximately caused by conduct of a person acting under color of state law.   Defendant TRHS has been deemed an employee of the public health service by the Department of Health and Human Services and as such is recipient of substantial government funding.

53.   Mendez was denied any kind of due process by defendant TRHS as outlined under their detailed progressive discipline procedures.   He was also denied the training outlined in their company's policy.   Mendez was subsequently terminated and discouraged to file an appeal with the board of directors.

54.   Mendez has exhausted his administrative procedures under the Idaho Human Rights Commission.

55.   Mendez has been deprived of liberty and property as a result of hardship caused by defendant who denied him adequate procedural protection.

### SEVENTH CAUSE OF ACTION

<u>FEDERAL TORT CLAIM ACT UNDER 28 USC 2671-2680</u>

56.   The right to continued employment meant that Mendez had the right to continued Health

11

coverage.   Mendez had been without Medical insurance for almost five years.

57.   An appointment for a wellness exam on 1/14/2020 revealed an EKG with abnormalities that were consistent with Mendez ill symptoms.   Subsequently, Mendez was referred for a more specialized test that checks the heart for 48 hours called a 'Holter Monitor'.   He was only able to see a doctor until he finally qualified for Medicaid in 1/2020 due to his low-income.

58.   The holter results reveal several premature ventricular contractions.   Mendez was subsequently seen at the ER which showed another abnormal EKG with a high heart rate over 100 for the whole visit and an elevated d-dimer over 1,000.   In short, Mendez has suffered harm as a result of not being able to get regular checkups due to lack of insurance.

59. Mendez lifespan has likely being shortened due to Defendant's unlawful conduct.   As an entity providing health services on behalf of the USHHS; the Federal government is liable for TRHS harming Mendez.

## **PRAYER FOR RELIEF**

WHEREFORE, Mendez requests judgment against the corporation as follows:

1.   Award Mendez back pay, pre-judgment interest, back fringe benefits and any other appropriate relief necessary to make Mr. Mendez whole and compensate him for the civil/constitutional rights and other injuries described herein in an amount to be proven at trial;

2.   Award Mendez front pay, front fringe benefits and other future compensation in an amount to be proven at trial;

3.   Award compensatory damages for emotional distress, pain and suffering and other non-economic damages in an amount to be proven at trial;

4.   Award Mendez the costs of this action, including reasonable attorney' fees should he retain one in the future pursuant to 42 U.S.C. 2000;

12

5.   Award Mendez punitive damages for the Corporation's violations of Title VII of the Civil Rights Act of 1964, pursuant to 42 U.S.C. 2000;

6.   Award Mendez punitive damages for the Corporation's violations of Mendez Constitutional rights under 42 U.S.C. 1983;

7.   Award Mendez comprehensive/full medical coverage given his Medical condition makes it necessary for the rest of his remaining life.

8.   Award Mendez such other and further legal and equitable relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, Mendez hereby demands a trial by jury on all issues properly triable to a jury in this action.

DATED:   November 15, 2021

Raul Mendez

13